We're going to move now to Appeal 24-3196, United States v. Metts. Mr. Roy, we'll let you set up camp here and then approach the lectern. Thank you, Judge. You're welcome. Good morning. May it please the Court, opposing counsel, Michael Roy, on behalf of Appellant Joshua Metts. This Court should vacate Metts' revocation judgment and remand for further proceedings. I think this appeal comes down to a pretty simple point, which is that the District Court just misunderstood the elements of the offense that Mr. Metts was accused of violating. I think there's no doubt, reading the transcript, that the Court did not realize that reasonable suspicion for the initial stop was a substantive element of the crime, not just something that might be relevant to, say, a suppression hearing or some other evidentiary issue, but actually a substantive element that needs to be found in order to find by a preponderance of the evidence that he violated the statute. Would you mind if I pause you on that? Reasonable suspicion of what? Any reasonable suspicion that would allow the officer to make a traffic stop. Since it is a traffic stop in this case, it could be something as simple as violating traffic laws. We recognize that. Okay, and your point there is that there's no express finding by the District Court on that element.  And therefore, we should remand to allow that finding to be made or not made. I think at this point— One way or another, it has to be made, is your point. Right. It does have to be made. To be frank, at this point, it's all a little bit academic. He is released July 10th is the end of his sentence. The case becomes totally moot at that point. So realistically, any remand now probably would just go back to the grade C violation, which we concede the government did establish at the hearing and the court found. So I don't imagine anything happening other than negotiating time served. And is it fair to say you don't favor the approach of us, kind of a la Scott v. Harris, of watching the video and finding for ourselves that there was a traffic violation? Right. And there's two reasons for that. One is that the government didn't develop an argument for appellate findings on the video, which there are situations where that is appropriate. Like Scott v. Harris is the big one, but also in criminal cases that has been done on suppression hearings. The government hasn't developed that argument. And I think part of it is most of the disputes involved things that were not on camera. So the camera itself doesn't show how fast he was going or like, you know, it's one thing to see a video from the dashboard camera versus what Officer Reddin actually saw when he saw him crossing the road and whether it looked like it was speeding. So that all then was disputed with the investigator going out measuring lines. Whether he was driving recklessly enough for that to be a separate violation when he saw the car turning. The video itself shows him in the middle of the turn, plausibly there could have been some more reckless driving that was off camera before that, but that's a credibility issue. That was what Officer Reddin saw. He saw around the corner, not on the camera. So that would go then back to the court's credibility determinations outside the scope of what this court can decide on the field. I do want to briefly address the taillight statue just because that's sort of more abstract legal thing. And, I mean, the record's pretty clear. There's photos or I guess video screenshots from the video of what his taillights looked like.  And just so we've got it correct, and again, it's up in the air with regard to the use of the video, but it did strike me reviewing that, that I see the argument about there being two components on the right side of the taillight and then when he brakes, both go on. Correct? Well, the two on the right are always on. It's the above light that turns on and off with the brakes. And the government's correct that that brake light, plain text of the statue, that doesn't count as the taillight because last subsection of the taillight statue, subsection E, says the lights must remain on whenever the headlights are on. So a brake light does not count. So the dispute is whether an officer could reasonably misunderstand the statue to think that you need to have left side lights as well. And I want to be clear, it's not what like the general public would assume or speculate a taillight statue to involve because I think, you know, you pull 10 random people on the street and they just need left and right taillights, but the issue is construing this actual statue, what would be a reasonable construction of it. And the only mention of anything about location is subsection D, which talks about height. There's nothing about left versus right placement. And then the history of the Indiana courts construing the statue, they have consistently construed it strictly. It only requires what it explicitly requires. I think a great example is the one the government uses, Williams, where they're saying, look, as a technical matter, it does not require only red light. It can be a mix of red light and other lights. But we recognize that people could reasonably disagree in that case because there's a lot of talk about the color of the light throughout the statue. You could reasonably interpret it to say, well, maybe it does have to be all red because that's a plausible construction of the statue. But in this case, there isn't anything about left versus right that would lead to a similar reasonable construction. And then on top of that, we know from cases like Williams that they do, as a technical matter, construe it strictly. And I realize this all kinds of gets into legal fictions, right? I'm sure they're not having officer trainings on every single court decision about taillamps, But since we're in the Fourth Amendment, when we're talking about reasonable suspicion, and we are strictly talking about federal law, Fourth Amendment, even though it's a state statute, we're in that legal fiction of objective reasonableness and what's a reasonable construction of the statue. Mr. Roy, don't let me boil this down too much or be reductionist about anything, but is your position coming down to literally just the validity of that initial stop? Because it doesn't seem you're not suggesting that there's any way to watch the video and conclude that Mr. Metz was doing something other than fleeing from the police. That's correct. So it's all about if there was reasonable suspicion to support the initial stop, he's got a real uphill climb here. Right. It's just the initial stop. And I want to be clear, we're not saying that if you have an illegal traffic stop, you're allowed to break whatever law you want while you're fleeing the stop. Of course not. And it could be relevant if they had found contraband, that could be something to defeat a suppression hearing. In terms of the latter order to stop on foot, I mean, we're conceding that because they had plenty of reasonable suspicion by that point. But if you look at the actual statue, the Indiana statue, the textual elements of it, so sorry, in section 1A, so first, knowingly, intentionally, element two is flees, not just goes away, but it says flees. And then three, officer identified, four, order the person. And then the Indiana Supreme Court grafted onto that, not just that the person fled, but also that they fled from a lawful order. So the flight itself can't be the cause of the reasonable suspicion. And this, I mean, this comes down to really a policy decision by the Indiana Supreme Court. Like they're deciding their own substantive state law. I think there's a lot of concern often that sort of resisting arrest, resisting law enforcement offenses, those can be more prone to abuse than others. So Mr. Roy, the subsequent acts have nothing to do, you're reading the statute as they fled from a lawful order to stop. So if a police officer makes an order to stop, there's no, based on reasonable suspicion, the defendant can go and commit any crimes in the course of flight, doesn't matter what crimes the defendant commits, doesn't matter what additional probable cause is developed during the defendant's flight, you always revert back to the initial order. So if a police officer pulls him over, he's stopped, guy runs over someone, and the police officer says, stop, and the guy keeps going, it doesn't, we all go back to that first stop, it doesn't, everything is gone. For purposes of if the initial flight was a separate criminal violation, running over someone would be, I don't know Indiana law well enough, I assume negligent homicide or something.  But why would all these traffic violations that he commits while the lights are on, why does that not create additional reasonable suspicion and additional lawful orders to stop? Well it does for the later, when he's on foot and they're making the verbal order to stop. But I think the government's site that they have, I believe it's Touchstone, they cite it to say that resistance can be a continuing event, but I think that cuts both ways. And that it's a continuation still of the same order to stop. So what you're saying is there's no new order to stop? No, it's the same order. So he can continue to commit additional crimes and the lights, the police officer's lights have no effect when he's flying through stop signs and running through red lights, it doesn't matter, it all reverts to that initial stop. For the purposes of this one substantive offense that he was alleged to violate, I mean they can, if they chase him down, find drugs in the car, probable cause for automobile search or whatever, right? If they, I think Murdoch, one of the government's cases, that's also an example where they fled from one officer and then another officer comes and that's a separate resistance arrest. But the Indiana Supreme Court made the decision, it says in Gaddy in footnote four, a citizen's conduct after being commanded to stop cannot retroactively justify the command. And then we point to Jones as the most on-point case from Indiana law. I see I'm out of time, so I will give you some rebuttal time. Thank you, Mr. Roy. Mr. Whalen. May it please the court. Good morning, your honors. Nathaniel Whalen here on behalf of the United States. I'd like to pick up right where defendant left off with footnote four of Gaddy. Mr. Metz, I believe, just said that this is all a continuation of the order, it's the same order. If that's true, then he loses, your honors, on harmless error review because if you look at footnote four of Gaddy, and I'm going to quote the court, the court says the reasonable suspicion must develop from the defendant's acts, quote, proceeding or concurring with the officer's order. So if this is all a single order, and I think that's the right reading of Indiana state law, then everything going on during the course of the order supports reasonable suspicion for the stop. And I think that's consistent with the statute. And if you look at what the statute says, this isn't a moment in time. The statute says a defendant who flees from a law enforcement officer after he has, by visible and audible means, identified himself and ordered the person to stop. So we have two different components. We have the officer ordering the person to stop and the officer identifying himself. There's no doubt Officer Reddin identified himself as a law enforcement officer when he turns on the lights. And then he proceeds to order Mr. Metz to pull over. This is a order that lasts over the course of essentially four minutes, because Judge Scudder, I guess I'm going to nitpick a little with the words. There is no stop in this case until about five minutes into the offense. This whole time he is ordering Mr. Metz to pull over. And so concurrent with that order, there's for sure reasonable suspicion to pull him over. He doesn't pull off to the right like you're supposed to when a law enforcement officer turns on their lights. He speeds. He goes through stop signs. He's driving in and out of traffic. So your point is that it could develop even if there's no reasonable suspicion at literally the moment Officer Reddin hits the lights. Correct. That's correct, Your Honor. Because there's the identification the moment he hits his lights and then there's the order. And this order is continuing. And I guess if the defendant is right and the second Officer Reddin turns on his lights, that's the beginning and end of the order. What we're going to have is we're going to have essentially a law where the officer is engaging in this high-speed chase. If he turns off his lights for a second, then turns them back on, that in theory is now a second order. And that just doesn't make sense. It's not consistent with the statute. It's not consistent with Indiana case law. And I do think this court should look at Touchstone in terms of Indiana case law because the order is not a single moment in time. It's a continuum. In that case, we have an order that's going through multiple different locations. It's actually multiple different orders. And what the Indiana appellate court, I believe, and I might be wrong, I apologize if that's Indiana Supreme Court, what they say is that this is all one order. It supports one resisting arrest. And so here we have the situation, I mean, I think the best example I can think of is if you're driving down the Dan Ryan and you see lights go on in your rearview mirror, you wouldn't say that you're ordered to stop at that point. You try to figure out, is the officer ordering me to stop? And he pulls up behind you and maybe that's an order for you to stop, maybe not, right? It's until he starts directing you over here, she starts directing you over there, that's the order. So it's not just the moment you turn on the lights. And I think when you look at footnote four of Gaddy and you talk about concurring with the officer's order, to the extent that the defendant is saying that this is all one continuing order, for sure everything that's happening at this time is concurring with the officer's  So your point, if we just sit here and make up hypotheticals, if you have a situation where you ask an officer, why did you hit the lights to stop John Doe? And the officer says, I had no reason whatsoever, I just felt like it. But then John Doe continues to flee, runs through stop signs, is driving on the sidewalk, etc., etc. You'd say, yeah, at that point you're in the area here of reasonable suspicion to believe the Indiana flight statute's been violated. That's correct. And the initial problem, the Fourth Amendment problem with the beginning of the hypothetical, you'd say it doesn't taint the rest of it. That's correct, Your Honor, because it's a continuing order. And I think that is consistent with Touchstone. That's consistent with Fourth Amendment principles. And you know, Gaddy's not really on point with this case because there we're talking about someone who's walking away and they just continue to walk. And if you look at Gaddy, it draws a distinction between that case and a case where a defendant is changing behavior, fleeing, engaging in furtive activity, and is uncooperative. If that, Gaddy says, that's the Fourth Amendment problem when you start doing that in response to the officer's order. That's when you're going to- So is your point there that the limiting construction that was given in Gaddy with respect to somebody on foot, it's not at all clear that it would apply to the vehicle situation? It certainly applies differently, the same way the Fourth Amendment applies differently to vehicle situations than it is. Because Gaddy says, yeah, you're allowed to keep on walking. You're allowed to peaceably resist or peaceably not cooperate with an unlawful order. There is a difference when we're talking about fleeing, when we're talking about in the car situation. Correct, Your Honor. In terms of just reviewing the videos, you know, Scott v. Harris, I did not identify that. I'm unaware of any precedent that says that when we're asking this court to engage in harmless error, we have to identify a specific kind of method for this court to. I'm not asking this court to make- I'm asking this court to engage in the harmless error analysis that applies when a finder in fact fails to make a finding on a specific element of the offense. It's what this court did in Golden in the supervised release context. It's what the Supreme Court says you do in a trial context. If there's, you know, you don't instruct the jury on an element of the offense, the finder doesn't make a finding on the element of the offense, it is subject to harmless error. Here it's our position that the error is 100% harmless if you look at the record. Even with his statement, whatever the case may be, or the statement that seems to reference to this particular time frame. Yeah. So I don't think that actually- I think there's a little bit of inconsistency in terms of how that statement's represented. What the court is saying is there's inconsistency about what happens before Officer Reddin turns on his lights. You know, that's the point where Mr. Metz presents testimony that he wasn't speeding. What the court says is the second you turn on your lights, and this is on page, I believe, 13 of the defendant's brief. What the court says is when you- when Officer Reddin turned on his lights- I'm sorry, page 11. Oh, 11 of what? 11 of the blue brief? 11 of the blue brief. I'm sorry. You're on the right. All right. Yep. So the court says whatever may have transpired at the beginning of the interaction between you and Officer Reddin. And that's the point he's talking about, that Officer Reddin testifies, I saw the defendant speed across. And Judge Lichty says, I'm not worried about what happens, that. Because the next paragraph makes clear, at a later point in the video, Officer Reddin activates his emergency lights. So when he's talking about whatever may have transpired at the beginning of the interaction, he's talking about prior to the lights being turned on. Now I admit Judge Lichty did not make a finding of reasonable suspicion as it relates to the felony offense. I don't think we could argue otherwise on this record. You know, as a matter of Indiana law, it's not clear to me that that is an element that needs to be proven to a jury beyond a reasonable doubt for the reasons we set forth in our  Ultimately, though- What about Apprendi, though, in the sentence? Yeah, so I don't think- I think the Indiana courts talk about it as a necessary condition of conviction, which I think there are lots of things that we do, and certainly the federal system that are that, that don't need to be proven beyond a reasonable doubt. You know, venue, statute of limitations, we wouldn't instruct juries on those. But those need to be a condition of conviction. If the defendant raised a due process argument and said the statute's unconstitutionally vague, we don't prove to the jury that the statute is constitutionally vague. In fact, I think that's probably the closest analysis or analog because what this court would do in light of that argument is look at the defendant's offense conduct and say, well, does this fall within kind of the heartland of what the statute talks about? And if it does, we're going to affirm. That's how I read what the Indiana courts are doing. I admit the Indiana courts also are struggling themselves to figure out how to implement GATI, and that's clear in the Jones opinion. You know, I think the easier way probably to decide this case rather than getting into Indiana substantive elements of the offense is to decide it on harmless error analysis, which we think there is certainly a harmless error here. Unless this court has any further questions, we would ask that you affirm the revocation judgment. Thank you, Mr. Whalen. Thank you. Mr. Roy, let's give you two minutes for rebuttal. Thank you, Judge. I think two minutes is pretty generous. I want to start with just the last paragraph of GATI before the conclusion, where the Indiana Supreme Court literally says their holding is you need, quote, sufficient evidence to prove the element that the order to stop was supported by probable cause or reasonable suspicion. There's no doubt that as a substantive matter, it's an element of the offense of resisting law enforcement in Indiana. And I respectfully disagree with the government that the criminal, substantive criminal law is not the issue here. I think that's the whole game here, is the substantive law. Your argument boils down to there can only be one order to stop. I mean, there can be individual orders to stop, but those would be separate offenses. In this case, I see two in the video. One at the beginning when they initiate the traffic stop, and then one after he gets out on foot. And I'll admit when I wrote the blue brief, I had not noticed in the video that he actually fled after the order to stop, because it's kind of a shadowy video. But upon review for the reply, I agree with the government on that one. There's no separate orders to stop as he's running through stop signs and running through traffic lights. No, no. It's all still the initial order to stop. And I think the one Indiana case that is most on point is Jones, where they had the initial order to stop, and the person fled in a vehicle, almost ran into the squad car, or maybe it was a different squad car. I don't remember exactly, but almost hit a squad car and sped away. In the Indiana Court of Appeals, still felt the need to go through to determine was there reasonable suspicion for the initial stop. They determined- Mr. Roy, how do you footnote for us as a person's conduct after receiving an order to stop from police may provide a new basis for reasonable suspicion or probable cause to support a subsequent order to stop, from which resisting law enforcement by fleeing could be successfully prosecuted? How do you read into that, that, you know, you turn on your traffic lights, and as long as the officer is in pursuit, you can commit as many crimes as you want, because it's just one order to stop, all the way going back to the initial stop. But then, what sense does it make when he gets out of the car and the officer yells, stop, and he runs away? That's a separate order to stop. Where do you find that in the law? I think that's how Indiana courts have treated this element of it. So I think Murdoch is the example where there is a subsequent order. One order to stop, guy flees, another officer comes. That adds into the reasonable suspicion for future stops. Same with, in this case, if after they pulled him over, they found contraband in the car. I mean, at that point, there's probably enough for probable cause of contraband in the car, right? There was no contraband in this case, however. And I mean, talking about substantive criminal law, officers automatically have the ability to seize people. I mean, they have guns. There's lots of Miranda cases of people thinking they're seized, even when, as a legal matter, they haven't been arrested or detained. So this, having a separate criminal offense for flight is just a pure policy decision. You don't necessarily even need to have a flight criminal offense, and the Indiana courts can define that offense however they want. If there's no further questions. Thank you, Mr. Roy. You may stay up there, though. I'm going to grab my phone. All right, very good. The case will take an advisement.